**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DARRELL LEE HICKS #405-906       *

Plaintiff                            *

v                                 *      Civil Action No. ELH-14-3731

WARDEN ROBERT HANKE       *
WARDEN KATHLEEN GREEN
LIEUTENANT ROBERT KING[1]     *
LIEUTENANT STEVEN THOMAS
OFFICER JACOB SHORES        *
COUNSELOR EVAN LANE
ARC SHANIKA GUSTUS         *
ECI MEDICAL DEPARTMENT SUPERVISOR[2]
ARHC C. SESSEN[3]            *

Defendants                 *
                             ***

## MEMORANDUM

Plaintiff Darrell Hicks, a self-represented inmate at Eastern Correctional Institution ("ECI"), filed suit under 42 U.S.C. § 1983, alleging a violation of his rights under the Eighth Amendment and Article 24 of the Maryland Declaration of Rights. ECF 1 at 6. He appended numerous exhibits to his suit. Plaintiff, who suffers seizures, claims to have twice fallen from

---

[1] The Clerk shall amend the docket to include the full and proper spelling of defendants' names.

[2] This individual, who may have been employed by the contractual health care provider, Wexford Health Sources, Inc. (ECF 1 at 7) was never identified and did not receive a copy of the summons and the complaint. For reasons apparent herein, had this person been identified and served, he or she would be entitled to dismissal or summary judgment.

[3] This individual, a Division of Correction ("DOC") employee assigned to DOC Headquarters, is alleged to have had responsibility for responding to administrative remedy procedure appeals filed by prisoners. He or she was never identified by name and did not receive a copy of summons and the complaint. Had this person been identified and served, he or she would be entitled to dismissal or summary judgment, for reasons apparent herein.

his upper bunk bed, on August 2 and August 3, 2014, resulting in injury. ECF 1-2 at 1-8.[4] He asserts that correctional personnel at ECI were deliberately indifferent to his medical needs, because they deliberately ignored medical orders to provide him with a bottom bunk bed. ECF 1-1 at 1-4. Further, he alleges that he was denied medical treatment following one of the incidents. ECF 1-3 at 6. He seeks compensatory damages, punitive damages, and injunctive relief.[5]

I initially construed Hicks's complaint in part as a request for a temporary restraining order to require correctional officials to follow medical orders to assign him to a bottom bunk. ECF 3. I also construed Hicks's complaint as an allegation that correctional officials were ignoring medically prescribed directives and, by doing so, ignoring his serious medical condition, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* Therefore, I issued an order to show cause (ECF 3). Defendants responded (ECF 9) and demonstrated that Hicks has been assigned to a bottom bunk since August 3, 2014, the day after the alleged second fall from the upper bunk. ECF 9 at 2 ; ECF 9-1, Declaration of Sgt. Michelle Switalski, Litigation Coordinator. ¶ 3. Hicks also responded. ECF 11.

Now pending is defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF 22. It is supported by a legal memorandum (ECF 22-1) and exhibits.

---

[4] This Memorandum cites to pagination assigned through the court's electronic docketing system, which does not necessarily correspond to the page numbers on the pleadings or exhibits.

[5] Hicks's request for injunctive relief mandating that correctional officials follow medical orders and assign him a bottom bunk is moot; he received a bottom bunk bed on or about August 3, 2014, within hours after his second alleged fall. Article III of the Constitution limits judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.,* 494 U.S. 72, 477 (1990) (citations omitted). A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (quoting *County of Los Angles v. Davis,* 440 U.S. 625, 631 (1979)).

I shall refer to the motion and memorandum collectively as the "Motion." Hicks opposes the Motion. ECF 24, Opposition.[6] Hicks has also renewed his request for counsel. *See* ECF 21. Hicks has described his case as "neither complex nor complicated." ECF 11. For the reasons set forth previously in my Order of March 9, 2015 (ECF 18), I shall deny his request for an attorney.

No hearing is needed to resolve the dispositive Motion. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, I shall construe the Motion as one for summary judgment and I shall grant it.

## I.  Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

---

[6] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Hicks was notified in April 2015 of his right to file an opposition. ECF 23. Hicks's Opposition merely states that he is entitled to summary judgment because defendants' Motion was untimely filed. ECF 24. Hicks is mistaken. Defendants were granted until April 6, 2015, to file their motion (ECF 17), and they did so. ECF 22. I will construe Hicks's correspondence and exhibits received December 10, 2014, January 28, 2015, and March 16, 2015 (ECF 7, 12 and 21) as part of his Opposition.

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the

party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)) "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on

the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Hicks has not filed an affidavit under Rule 56(d). However, Hicks has filed correspondence indicating he "cannot get the additional material evidence needed to defend" against defendants' Motion, and has no "had access to discovery." ECF 21 at 1. Hicks appended to that correspondence a copy of his medical records, which clearly support his claim that he suffers from epilepsy and requires a lower bunk. Hicks also submitted multiple exhibits with this complaint, relevant to his claims. When these documents are combined with the exhibits provided by defendants, it is hard to discern what additional discovery might be needed. Nor has Hicks suggested what additional discovery is needed.

I am satisfied that, given the exhibits presented here, it is appropriate to address the defendants' Motion as one for summary judgment. This will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Hicks is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## II. Discussion

### A. The Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A "'serious . . . medical need'" is "'one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Hudson v. McMillan*, 503 U.S. 1, 9 (1992). Objectively, the medical condition at issue must be serious, because there is no expectation that prisoners will be provided with unqualified access to health care. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Proof of an objectively serious medical condition, however, does not end the inquiry.

In order "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. The Fourth Circuit has characterized this as an "exacting standard. . . ." *Id.* It explained in *Lightsey* that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000 (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

The Fourth Circuit has "identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, actual knowledge of the risk of harm to the inmate is required. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer[ ] should have recognized it."). Beyond such knowledge, however, the officer must also have "recognized that his actions were insufficient " to mitigate the risk of harm to the inmate arising from his medical needs. *Parrish*, 372 F.3d at 303 (emphasis added)." *Iko*, 535 F. 3d at 241.

Notably, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at *2-3 (D. Md. June 4, 2012) (citing *Wright*

*v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *see Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).   Moreover, "any negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."   *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).   Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice.   Rather, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious."   *Brice*, 58 F.3d at 105.   *See Makdessi v. Fields*, 789 F.3d 126, 133, (4th Cir. 2015).   And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence. . . ."   *Makdessi*, 789 F.3d at 134.

## B.  Allegations

Defendants do not dispute that Hicks receives medication for epileptic seizures[7] and that, at the time relevant to this case, Hicks had a valid medical order for assignment to a bottom bunk for one year.  ECF 1-1 at 2.  The parties also agree that Hicks received medical treatment on August 2, 2014, after an alleged fall, and that he was moved to a bottom bunk on a first-floor housing tier on August 3, 2014.  ECF 9-1, Declaration of Sergeant Switalski, ¶ 3; ECF 11 at 1, Hicks' response to Show Cause Order.

---

[7] A medical record submitted by Hicks indicates that Hicks's seizures apparently stem from a 1984 suicide attempt involving a gunshot to the head.  ECF  21-1 at 1 (Office of Inmate Health Services record of July 26, 2012).

1.      **Plaintiff**

Medical records provided by Hicks indicate Hicks had been given one-year bottom bunk status in 2012 and again on September 6, 2013.  ECF 1-1 at 1-2.  Hicks alleges that on August 1, 2014, he provided medical documentation to defendants Steven Thomas and Jacob Shores, confirming his medical need for a bottom bunk.  ECF 1 at 7; ECF 1-1 at 2.  Hicks claims that Thomas and Shores ignored the information and assigned him to a top bunk.  During the early morning hours of August 2, 2014, Hicks claims he suffered an epileptic seizure, fell from his bunk, and was injured.  ECF 1 at 7.

Hicks was examined by Physicians' Assistant Bruce Ford on August 2, 2014, at 9:56 am.  ECF 22-3 at 4.  Ford observed slight swelling of Hicks's right ankle and noted scarring on the ankle from previous surgery.  *Id.*[8]  An x-ray was ordered to rule out cartilage separation in the chest.  No abnormality was apparent on the x-ray.  ECF 22-3 at 6.  Although Hicks's medical record already reflected that he had been granted a one-year medical note for bottom bunk status (ECF 1-1 at 2), Ford provided Hicks with another Medical Assignment for bottom bunk status on a bottom floor.  ECF 1-1 at 3-4.  However, Hicks was not given a bottom bunk that day.

Hicks claims that he suffered another seizure during the early morning hours of August 3, 2014, and again fell from his bunk.  He states he was threatened by defendant Robert King with segregation lock-up when he requested medical treatment on the morning of August 3, 2014.  ECF 1 at 8.  Hicks has provided a Declaration from Richard P. Brendoff, a DOC prisoner held on Tier B, who avers that he saw Hicks on some unspecified date receiving assistance from Officer Thomalin, after Hicks injured himself falling from a top bunk following an epileptic seizure.  ECF 7 at 2.

---

[8] Hicks had a history of arthritis in the ankle.  ECF 22-3 at 13.

Hicks takes issue with Switalski's averment that he is housed in a bottom housing tier so that Hicks has no need to use the stairs to reach his cell. Hicks indicates that he has to climb stairs three times each week to receive a shower, and seeks to add Switalski as a defendant, claiming her assertion that he need not use stairs is "fraudulent." ECF 12 at 1-2.[9]

As noted, Hicks responded to this Court's show cause order issued to the State when the case was filed. *See* ECF 3; ECF 11. Hicks stated: "Pro se Plaintiff Darrell Lee Hicks acknowledges and does not dispute the fact that on August 3rd, 2014, defendants finally complied with physician prescribed medical treatment by placement in a bottom bed. . . ." ECF 11.

## 2. Defendants

Defendants indicate that on August 1, 2014, Hicks was moved from disciplinary segregation housing to general population housing. ECF 22-2, Switalski Declaration, ¶ 3. They contend that Hicks was accidentally given a top bunk because information regarding his bottom bunk assignment was not recorded in the newly-implemented electronic database system ("OCMS"), upon which prison personnel rely when moving prisoners. *Id.* ¶ 4. Defendants assert that OCMS only maintains records on treatments regarding prisoner handicaps that are considered permanent. *Id.* Because Hicks's bottom bunk assignment was for one year, his epilepsy was not classified as a permanent condition. As a result, it was not listed in OCMS. *Id.* Thus, prison staff who moved Hicks were unaware of his need for a bottom bunk. *Id.* ¶ 5.

---

[9] Even if Hicks has to climb stairs on occasion to avail himself of showers, this does not undermine defendants' attempts to accommodate his intermittent epileptic episodes or to house him so as to minimize his need to climb the stairs to reach his cell. Despite Hicks's suggestion to the contrary, medical records do not suggest that Hicks suffers such severe disability that he cannot occasionally climb stairs. Hicks's request to add Switalski as a defendant is denied.

CO II Jacob Shores was working on Friday, August 1, 2014. However, he was unaware that Hicks required a bottom bunk. ECF 22-4, Declaration of J. Shores, ¶ 3. Shores was not at work on Sunday, August 3, 2014. *Id.* ¶ 4.

Hicks was seen by Bruce Ford, PA, on August 2, 2014, at 8:47 a.m., for lab work. ECF 22-3 at 2-3. There is no reference to a fall in the medical record. *Id.*

Then, at 9:56 a.m. on August 2, 2014, Hicks had an "urgent" health care visit, and was seen again by PA Ford. *Id.* at 4-5. At that time, Hicks reported that he fell out of bed. ECF 22-3 at 4. As noted, "slight swelling of the right ankle" was observed and an x-ray was ordered. *Id.* Defendants do not deny that Hicks was not moved to a bottom bunk on August 2, 2014.

Hicks informed corrections staff that in the early morning hours of August 3, 2014, he suffered another seizure and again fell out of bed. Switalski asserts that Hicks was moved to a bottom bunk at 10:13 a.m. on *Monday*, August 3, 2014. ECF 22-2, ¶ 7. In his Declaration, defendant Robert King avers that Hicks was moved on August 3, 2014. ECF 22-5, ¶ 4. And, Hicks concedes that his bed was moved on August 3, 2014. ECF 11.

I pause to note that in 2014, August 3rd fell on a Sunday, not a Monday. It appears that Switalski's reference to the day (Monday), is erroneous, but her reference to the date (August 3rd) is correct. Indeed, Hicks concedes he was moved on August 3, 2014. *See* ECF 11. Therefore, Switalski's mistake is of no legal significance. In any event, even if Hicks was not moved until Monday, August 4, 2014, it would not alter the outcome of this opinion.

According to Lt. King, Hicks initially refused to move. ECF 22-5 ¶ 4. Hicks complied when King informed him that failure to comply would result in a violation of institutional rules. *Id.* ¶ 4. Although Hicks showed no visible injuries, King submitted a request for Hicks to be

seen by the Medical Department, and medical personnel informed King that they would be able to see Hicks within the hour. *Id.*

Notably, the medical record reflects that Hicks did not report having a seizure to medical personnel on August 3, 2014. Indeed, he did not report having a seizure to medical personnel until August 9, 2014. ECF 22-3 at 9 (Medical Records). Dr. Charles Weng examined Hicks on that date and noted that Hicks typically had one or two seizures per year, but reported having two seizures a week earlier, on two consecutive days. *Id.* Dr. Weng noted that Hicks showed "No apparent distress." *Id.*

### C. Analysis

As noted, defendants claim that Hicks was accidentally assigned to a top bunk because information regarding bottom bunk assignment was not recorded in the electronic database system, upon which prison personnel rely when moving prisoners. They further state that once the problem was recognized, Hicks was moved to a bottom bunk. Defendants Thomas and Shores did not play a supervisory role regarding Hicks's housing assignment and could not unilaterally change a bed assignment, and Thomas was not even assigned to work on August 1, 2014, the day Hicks was transferred to general population after completing his disciplinary segregation sentence. They also claim Hicks was not denied medical attention after his alleged falls.

### 1. Qualified Immunity and Supervisory Liability

Defendants raise three affirmative defenses. First, defendants assert entitlement to qualified immunity, arguing that their conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. *See Harlow v. Fitzgerald,* 457 U.S. 800 (1982); *see also Iko v. Shreve*, 535 F.3d at 238 (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 640 (1987)).  It is true that court cannot require prison officials to possess "the legal knowledge culled 'by the collective hindsight of skilled lawyers and learned judges,' but instead only 'the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.'"  *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007) (quoting *Jackson v. Long*, 102 F.3d 722, 731 (4th Cir. 1996)).  The Eighth Amendment claims raised here, however, were clearly established in 2014.  Thus, defendants cannot claim qualified immunity.

Second, Wardens Hanke and Green argue that the allegations against them are based solely on supervisory liability, under the doctrine of respondeat superior, and thus cannot proceed.  To the extent plaintiff's claim against Hanke and Green is premised solely on supervisory liability under the doctrine of respondeat superior, Hanke and Green are entitled to dismissal from suit.  *See, e.g., Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004).

The case of *Shaw v. Stroud,* 13 F.3d 791, 99 (1994), allows a supervisor to be held liable where (1) the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to another, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.   In the medical context, a plaintiff must show that:  (1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations

omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (supervisory liability for a prisoner's beating by prison guards).

Hicks has failed to allege or establish that either Hanke or Green played any role in the events of August 2 and 3, 2014. Thus, they are entitled to dismissal.

## 2. Exhaustion

For their third affirmative defense, defendants assert that Hicks's claims should be dismissed due to plaintiff's failure to exhaust available administrative remedies.

The Prisoner Litigation Reform Act provides, in pertinent part:

(a) Applicability of administrative remedies
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by

defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative remedies must, however, be available to the prisoner in order for a defendant to rely on exhaustion as a defense, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit has addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548

U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 987 F.3d 693 (4th Cir. 2015).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." C.S. § 10-206(a); *see generally* C.S. §§ 10-201 *et seq*.; COMAR 12.07.01.01(B)(1) (defining ARP). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8).[10]

---

[10] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

The inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

Filing a request for administrative remedy with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the administrative grievance process provided by the Division of Correction to its prisoners. *See* COMAR 12.07.01.04. The prisoner must file an ARP with the Warden within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first knew of the incident or injury giving rise to the complaint, whichever date is later. COMAR 12.07.01.05A. Maryland's grievance filing procedures require the grievant to provide information concerning the situation or occurrence that is the subject of the grievance, including the name of the official or employee involved. *See* COMAR 12.07.01.04(A)(5)(a)-(d). If the grievance is denied, the prisoner has thirty calendar days to file an appeal to the Commissioner of Corrections. COMAR 12.07.01.05C; *Blake v. Ross*, 787 F.3d at 697. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office. *See* 12.07.01.05B; COMAR 12.07.01.03; *see also* C.S. § 10-206; § 10-210; *Blake v. Ross*, 787 F.3d at 697.[11]

Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06A. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of

---

[11] A grievance about case management is addressed at COMAR 12.07.01.04(B)(9)(c).

judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle, supra,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). If defendants show that a claim is subject to the ARP process but has not been exhausted, the court may not consider the merits of the claim. *See Jones*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Rather, the claim must be dismissed if plaintiff cannot show that he has satisfied the administrative exhaustion requirement under the

PLRA, or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase*, 286 F. Supp. 2d at 528.

To be sure, "the exhaustion requirement is not absolute." *Blake*, 787 F.3d at 698. Nevertheless, there is no indication that Hicks, a frequent litigator in this Court, was in some way confused by a "murky" inmate grievance process. *Id.* at 701. Indeed, it appears that Hicks presented his ARP allegations by way of appeal to DOC Headquarters, where his claims were investigated and dismissed by the Commissioner of Correction. ECF 1-3 at 9-10. In dismissing the appeal, the Commissioner stated: "No further action will be taken through the ARP process." ECF No. 1-3 at 10.

It appears that Hicks complied with the exhaustion requirement. Nevertheless, in his complaint, Hicks fails to indicate how ARP Coordinator Shanika Gustus violated his constitutional rights. Although there is no merit to defendants' exhaustion defense, Gustus is entitled to dismissal from suit.

### 3. Medical Care

In the analysis of the alleged Eighth Amendment violation based on inadequate medical care, I shall assume that the objective component of Hicks's claim is met; he suffers a seizure disorder, and thus has a serious medical need requiring daily medication and placement in a bottom bunk. However, this does not end the analysis. Rather, as indicated, "in order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed,* 195 F.2d 692, 695 (4th Cir. 1999).

Hicks's medical problem was not "so obvious that even a lay person would easily recognize the necessity" for medical attention or the particular accommodation he requested

when he was being moved. *Iko v. Shreve,* 535 F.3d at 241 (quoting *Henderson v. Sheahan,*196 F.3d 839, 846 (7th Cir. 1999)); *Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987) (intense pain from untreated bullet wound serious); *Sosebee v. Murphy*, 792 F.2d 179, 182 (4th Cir. 1986) (jury could infer deliberate indifference from failure to obtain medical care for inmate dying from infection caused by bone caught in throat where symptoms would have been obvious); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (excruciating pain from delayed treatment of broken arm). This is not a situation where corrections personnel perceived a prisoner was about to suffer a seizure and did nothing. The record reflects Hicks's seizures typically occurred only once or twice a year. Moreover, the OCMS system used to determine Hicks's suitability to his new housing arrangement did not reference his medical condition. After plaintiff fell from his bed, medical treatment was promptly made available. Furthermore, a bottom bunk and accommodation on a bottom tier was provided less than 48 hours after the situation was made apparent to prison personnel.

A finding of deliberate indifference cannot be made on the undisputed facts of this case. Summary judgment will be entered in favor of defendants in a separate Order to follow.


<u>November 25, 2015</u>
Date

_____/s/_____
Ellen L. Hollander
United States District Judge